IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

                                  CIVIL NO. 18-1070 JB/JHR

      vs.                              CRIMINAL NO. 15-3253 JB

JUANITA ROIBAL-BRADLEY,

        Defendant.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDATION

This matter comes before the Court on Ms. Roibal-Bradley's *Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence* [CV Doc. 1] filed on November 15, 2018, *Motion for Home Confinement and Motion for Furlough to Attend Court* Hearings [CV Doc. 3], filed November 20, 2018, and *Motion to Appoint Counsel* [CV Doc. 6], filed November 27, 2018. On November 21, 2018, United States District Judge James O. Browning referred the matter for recommended findings and final disposition to U.S. Magistrate Judge Jerry H. Ritter. [CV Doc. 4]. Having reviewed the parties' submissions and controlling law, I present these proposed findings and recommend, after consideration of the parties' objections if any, that the Court deny Ms. Roibal-Bradley's Motions.[1]

## FACTUAL AND PROCEDURAL BACKGROUND

On September 10, 2015, a grand jury returned an indictment charging Plaintiff with: one count of Social Security fraud, in violation of 42 U.S.C. § 408(a)(4)(1) (2015); twelve counts of

---

[1] Before issuing this PFRD, I considered whether an evidentiary hearing was necessary, as instructed by Rule 8(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts. Because the outcome of this Motion turns on matters of law and its recommended disposition requires no further factual development, I concluded that no evidentiary hearing was necessary.

wire fraud, in violation of 18 U.S.C. § 1343 (2008) and ten counts of money laundering, in violation of 18 U.S.C. § 1957 (2012). [CR Doc. 1].

Attorney Jason Bowles entered his appearance on behalf of Ms. Roibal-Bradley on September 21, 2015. [CR Doc. 5]. On February 2, 2016, Ms. Roibal-Bradley pleaded guilty to one count of failure to disclose an event affecting the continued right to Social Security benefits payments and twelve counts of wire fraud. [CV Doc. 1, p. 29]. The Court accepted the Plea Agreement on September 12, 2016, and sentenced Ms. Roibal-Bradley to 37 months imprisonment as to each count of conviction, to run concurrently. [CR Doc. 55].

On October 12, 2016, Ms. Roibal-Bradley filed a *Motion to Withdraw Plea Due to Mental Incapacity* [CR Doc. 59].[2] Also on October 12, 2016, attorney Jason Bowles moved to withdraw as counsel, stating that he did not believe Ms. Roibal-Bradley could prevail on the Motion, which she requested he file. [CR Doc. 60]. On November 2, 2016, Mr. Bowles was permitted to withdraw [CR Doc. 74] and attorney Barrett Porter was appointed as counsel for Ms. Roibal-Bradley. [CR Doc. 75]. After conferring with Mr. Porter, Ms. Roibal-Bradley withdrew her *Motion to Withdraw Plea Due to Mental Incapacity* [CR Doc. 59] and her Amendment [CR Doc. 61] to the same. [CR Doc. 87].

On December 5, 2016, the Court held a restitution hearing on the United States' recommendation that Ms. Roibal-Bradley be ordered to pay restitution for fees incurred in the retrieval of the funds she fraudulently obtained [CR Doc. 93] and accepted the recommendation as to restitution. On March 8, 2017, the Court entered judgment, sentencing Roibal-Bradley to concurrent 37-month terms of imprisonment and ordering that Ms. Roibal-Bradley pay restitution

---

[2] An amended motion was filed October 13, 2016 to add a Certificate of Service to attorney Jason Bowles. [CR Doc. 61].

to the Social Security Administration (SSA) and to the fraud victims. [CR Doc. 95].[3]

Ms. Roibal-Bradley now challenges her confinement under 28 U.S.C. § 2255, asserting that she received ineffective assistance of counsel at various stages of her plea negotiations, sentencing, and disciplinary proceedings before the state bar. [CV Doc. 2, pp. 13-35]. Ms. Roibal-Bradley has also filed a *Motion for Home Confinement and for Furlough to Attend Court Hearings* [Doc. 3], and a *Motion for Appointment of Counsel* [Doc. 6].

## LEGAL STANDARDS

### A. Standard of Review Under 28 U.S.C. § 2255

Section 2255 provides that prisoners in federal custody may challenge their sentences if: (1) the sentence was imposed in violation of the United States Constitution or federal law; (2) the sentencing court had no jurisdiction to impose the sentence; (3) the sentence exceeded the maximum authorized sentence; or (4) the sentence is otherwise subject to collateral review. § 2255(a).

In this case, Ms. Roibal-Bradley claims her sentence was imposed in violation of the United States Constitution based on what she characterizes as five "counts" of ineffective assistance of counsel. [CV Doc. 1, pp. 6-7, 9-11; CV Doc. 2, pp. 13-35; CV Doc. 13, pp. 2-13]. If the Court finds that the sentence infringed Ms. Roibal-Bradley's constitutional rights and is subject to collateral review, the Court must vacate the sentence and discharge, resentence, or correct the sentence as the Court believes appropriate. § 2255(b).

---

[3] On March 14, 2017, pursuant to rule 36 of the Federal Rules of Criminal Procedure, the Court entered an amended judgment to correct a clerical error in the restitution it ordered. [CR Doc. 96]. In the Amended Judgment, the Court ordered restitution in the amount of $128,771.35. *Id.*

**B.  Standards for Claims of Ineffective Assistance of Counsel**

In order to prove ineffective assistance of counsel, Ms. Roibal-Bradley must establish that her "counsel's representation fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688 (1984).

First, Ms. Roibal-Bradley must demonstrate that her counsel's performance was deficient, which "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed ... by the Sixth Amendment." *Id.* at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. Accordingly, the Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* Ms. Roibal-Bradley must "overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (internal quotation marks and citation omitted).

Second, Ms. Roibal-Bradley must show that her counsel's errors prejudiced her. *Id.* In other words, Ms. Roibal-Bradley "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "It is not enough for [a petitioner] to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011).

In the context of plea agreements, Ms. Roibal-Bradley must show that the outcome of the plea process would have been different, i.e. that she would have received a more favorable sentence. *See Missouri v. Frye*, 566 U.S. 134, 148 (2012) (holding that where plea offer has lapsed or been rejected due to ineffective assistance, defendant must show the end result would have been

more favorable); *Lafler v. Cooper*, 566 U.S. 156, 163 (2012) ("In the context of pleas, a defendant must show the outcome of the plea process would have been different with competent advice.").

**ANALYSIS**

> **A. Ms. Roibal-Bradley Has Not Demonstrated That She is Entitled to Relief Under 28 U.S.C. § 2255**

> **1. Assistance of Counsel During Pre-Indictment Plea Negotiations**

In support of her claim that she received ineffective assistance of counsel during pre-indictment plea negotiations, Ms. Roibal-Bradley claims that Mr. Bowles: failed to advise her regarding the potential sentencing range based on the pre-indictment plea offer [CV Doc. 2, p. 13]; failed to explain the favorable aspects of the pre-indictment plea offer "as compared to a later plea offer which is typically stiffer" [CV Doc. 2, p. 14]; advised her not to take the pre-indictment plea and claimed he could obtain a better offer [CV Doc. 2, p. 13]; and allowed the pre-indictment plea offer to lapse without properly advising Ms. Roibal-Bradley as to the potential sentencing and favorable aspects of the offer [CV Doc. 2, pp. 13-14]. Ms. Roibal-Bradley claims that these errors resulted in prejudice because she would have accepted the first plea offer and received a lesser sentence had she been "properly advised." [CV Doc. 2, p. 14].

Mr. Bowles, by affidavit, states that he met with Ms. Roibal-Bradley numerous times and advised her on multiple occasions regarding the pre-indictment plea offer, including the sentencing guideline range, the offense level and potential adjustments, and the likelihood that a post-indictment plea offer would not be as beneficial to Ms. Roibal-Bradley. [CV Doc. 11-1, p. 2]. Mr. Bowles further states that he requested that the government allow Ms. Roibal-Bradley to plead to a misdemeanor charge, which the government refused to do, and that Ms. Roibal-Bradley rejected the pre-indictment plea offer because she did not wish to plead to a felony charge. [CV Doc. 11-1, p. 2].

This account is supported by emails exchanged between Ms. Roibal-Bradley and Mr. Bowles. In writing to Mr. Bowles, Ms. Roibal-Bradley expressed her concerns about pleading to multiple felony offenses but stated that she would be willing to plead to a misdemeanor charge. [CV Doc. 1, p. 17]. Mr. Bowles advised Ms. Roibal-Bradley that in his opinion, it was extremely unlikely that a misdemeanor plea would be offered and suggested that they seek a pretrial diversion instead of an indictment. [CV Doc. 1, p. 17].

Based on Mr. Bowles affidavit, the relevant portions of which are supported by his correspondence with Ms. Roibal-Bradley, I conclude that Ms. Roibal-Bradley has failed to satisfy the *Strickland* "reasonableness" test relative to Mr. Bowles representation during the pre-indictment plea negotiations. However, even if Ms. Roibal-Bradley could show that Mr. Bowles' representation during the pre-indictment plea negotiations was so deficient that it fell below the objective standard of reasonableness, she is not entitled to habeas relief because she cannot demonstrate that she would have received a lesser sentence had she taken the pre-indictment plea offer.

### a. The Plea Agreement

The plea agreement that Ms. Roibal-Bradley ultimately made with the government required her to plead guilty to one count of failure to disclose an event affecting a continued right to SSA Benefits Payments, 42 U.S.C. § 408(a)(4) as charged in count one of the indictment, and twelve counts of wire fraud, 18 U.S.C. 1343, as charged in counts 2 - 13 of the indictment. [CV Doc. 1, p. 29; CR Doc. 2, pp. 1-4]. Recognizing that at least 6 offense level enhancements were appropriate based on the offense conduct, [CR Doc. 29, pp. 6-8], the parties agreed that "a specific sentence of no more than 39 months" was the appropriate sentence and the Court would be bound by that limit if it accepted the Plea Agreement. [CR Doc. 29, p. 8]. After sentencing, the government

would move to dismiss the ten counts of money laundering, 18 U.S.C. § 1957, in the indictment. [CR Doc. 29, p. 8].

For purposes of sentencing, counts 1 - 13 were grouped together. [CR Doc. 34, p. 10]. The 2015 United States Sentencing Guidelines Manual, incorporating all guideline amendments, was used to determine Ms. Roibal-Bradley's offense level. USSG §1B1.11. The guideline for 18 U.S.C. § 1343 and 42 U.S.C. § 408 offenses is found in USSG §2B1.1 of the guidelines. USSG App. A. Section 2B1.1 of the Guidelines Manual provides that the base level for such offenses is 6. USSG §2B1.1.

Adjustments to that base level were made as follows: 12 offense levels were added due to the monetary amount of the loss attributable to the offenses, *see* USSG § 2B1.1(b)(1)(H), [Doc. 47, p. 1]; 2 offenses levels were added because the wire fraud offenses involved the violation of a prior, specific judicial order, *see* USSG § 2B1.1(b)(9)(C), [Doc. 34, p. 10]; 2 offense levels were added because Ms. Roibal-Bradley knew or should have known the victim of the offense was a vulnerable victim, *see* USSG §3A1.1(b)(1), [Doc. 34. P. 11]; 2 offense levels were added because Ms. Roibal-Bradley abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense, *see* USSG §3B1.3, [Doc. 34, p. 11][4]; 2 offense levels were subtracted because Ms. Roibal-Bradley demonstrated acceptance of responsibility for the offense, *see* USSG §3E1.1(a), [Doc. 34. P. 11]; and 1 offense level was subtracted because Ms. Roibal-Bradley assisted authorities in the investigation or prosecution of her own misconduct by timely notifying authorities of her intention to enter a plea of guilty, *see* USSG §3E1.1(b), [Doc. 34, p. 11]. Accordingly, the total offense level for purposes

---

[4] Ms. Roibal-Bradley had been trained and licensed as an attorney and held herself out to the victims as providing legal services even though at the time she had been suspended from the practice of law. [CV Doc. 1, pp. 32-33].

of sentencing was 21. [Doc. 47, p. 1; Doc. 69, p. 6].

Ms. Roibal-Bradley's criminal history score was 0, establishing a criminal history category of I. *See* USSG §4A1.1; USSG Ch. 5 Pt. A Sentencing Table. The sentencing range for an offense level of 21 and criminal history category I is 37 - 46 months imprisonment. USSG Ch. 5 Pt. A Sentencing Table. For each of counts 1 - 13 Ms. Roibal-Bradley was sentenced to 37 months imprisonment (concurrently), which was the lowest term of imprisonment within the applicable guideline range. USSG Ch. 5 Pt. A Sentencing Table. There were no upward or downward departures from the applicable guideline range. *See* USSG § 1B1.1 comment. n. 1(F) (defining a "departure" as the "imposition of a sentence outside the applicable guideline range or of a sentence that is otherwise different from the guideline sentence").

### b. The Pre-Indictment Plea Offer

The pre-indictment plea offer included the following terms: Ms. Roibal-Bradley would plead guilty to one count of wire fraud, 18 U.S.C. § 1343, one count of money laundering, 18 U.S.C. § 1957, and one count of failure to disclose an event affecting a continued right to SSA Benefits Payments, 42 U.S.C. § 408(a)(4). [CV Doc. 1, p. 16]. In exchange, the government would: stipulate to a three-point reduction from the criminal offense level, not move for an upward departure from the sentencing guidelines, and allow Ms. Roibal-Bradley to argue for a variance and downward departure from the applicable sentencing guideline range. [CV Doc. 1, p. 16].

Had Ms. Roibal-Bradley accepted the pre-indictment plea offer, her exposure would have been greater due to the inclusion of the charge of money laundering, 18 U.S.C. § 1957, which was excluded under the subsequent plea agreement. The guideline for 18 U.S.C. § 1957 offenses is found in USSG §2S1.1. USSG App. A. Section 2S1.1 provides that the base level for such offenses is 8. USSG §2S1.1. 12 offense levels should have been added due to the amount of the loss

attributable to the offenses, *see* USSG § S1(a)(2); USSG § 2B1.1(b)(1)(H), [Doc. 47, p. 1]; 1 offense levels should have been added for an offense committed in violation of 18 U.S.C. § 1957, *see* USSG § 2S1.1(b)(2)(A); 2 offense levels should have been added because Ms. Roibal-Bradley knew or should have known the victim of the offense was a vulnerable victim, *see* USSG §3A1.1(b)(1); 2 offense levels should have been added because Ms. Roibal-Bradley abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense, *see* USSG §3B1.3; 2 offense levels should have been subtracted because Ms. Roibal-Bradley demonstrated acceptance of responsibility for the offense, *see* USSG §3E1.1(a); and 1 offense level should have been subtracted because Ms. Roibal-Bradley assisted authorities in the investigation or prosecution of her own misconduct by timely notifying authorities of her intention to enter a plea of guilty, *see* USSG §3E1.1(b). Accordingly, the total offense level for purposes of sentencing on the money laundering charge should have been 22.

The sentencing range for an offense level of 22 and criminal history category I is 41 - 51 months imprisonment. USSG Ch. 5 Pt. A Sentencing Table. If Ms. Roibal-Bradley was sentenced concurrently for the one count of wire fraud, 18 U.S.C. § 1343, one count of money laundering, 18 U.S.C. § 1957, and one count of failure to disclose an event affecting a continued right to SSA Benefits Payments, 42 U.S.C. § 408(a)(4), as set forth in the plea offer and absent any departures from the applicable guideline range, the minimum sentence she could have received under the guidelines is 41 months. USSG Ch. 5 Pt. A Sentencing Table.

**c. Ms. Roibal-Bradley Has Not Demonstrated Prejudice Resulting From Her Decision to Enter Into the Plea Agreement**

Ms. Roibal-Bradley argues that, had she accepted the pre-indictment plea offer, the offense level could have been 15 since the government would have been precluded from seeking upward

departures from the applicable sentencing guidelines. [CV Doc. 2. pp. 22-23; CV Doc. 13, pp. 4-5].

This argument appears to conflate adjustments to the offense level, which are made in determining the applicable sentencing guideline range, and departures from the applicable sentencing guideline range, which are made after the applicable guideline has been determined. *See* USSG § 1B1.1 (providing the following steps for applying the sentencing guidelines: "(1) [d]etermine...the offense guideline section…applicable to the offense of conviction"; "(2) [d]etermine the base offense level and apply any appropriate specific offense characteristics, cross references, and special instructions contained in the particular guideline…in the order listed"; "(3) *[a]pply the adjustments as appropriate related to victim, role, and obstruction of justice*"; "(4) [i]f there are multiple counts of conviction, repeat steps (1) through (3) for each count"; "(5) *[a]pply the adjustment as appropriate for the defendant's acceptance of responsibility*"; "(6) *[d]etermine the defendant's criminal history category [and] any other applicable adjustments*"; "(7) [d]etermine the guideline range…that corresponds to the offense level and criminal history category"; "(8) [f]or the particular guideline range, determine…the sentencing requirements and options related to probation, imprisonment, supervision conditions, fines, and restitution." *The court shall then consider the "Specific Offender Characteristics and Departures*, and any other policy statements or commentary in the guidelines that might warrant consideration in imposing sentence." (emphasis added)).

Ms. Roibal-Bradley argues that the pre-indictment plea offer would have resulted in a lesser sentence because the government's agreement not to argue for an upward departure from the applicable sentencing guidelines would have resulted in a lower offense level, and thus a lower guideline range. [CV Doc. 2. pp. 22-23; CV Doc. 13, pp. 4-5]. However, the adjustments made in

calculating Ms. Roibal-Bradley's offense level are distinct from any departure from the applicable sentencing guideline range which the government could have sought. *See* USSG § 1B1.1; [CR Doc. 34, pp. 10-11]. Ms. Roibal-Bradley has not demonstrated that comparable adjustments would not have been applied had she accepted the pre-indictment plea offer. Moreover, during sentencing under the Plea Agreement the government did not seek upward departures from the applicable sentencing guidelines. [CR Doc. 34; CR Doc. 69]. Thus, there is nothing in the record to suggest that Ms. Roibal-Bradley would have received a lesser sentence if the government was precluded from seeking such departures.

In sum, under the pre-indictment plea offer, Ms. Roibal-Bradley's offense level could have been greater than the offense level for which she was sentenced under the Plea Agreement, due to dismissal of the money laundering charges under the Plea Agreement. A greater offense level corresponds to greater exposure under the applicable sentencing guidelines. *See* USSG Ch. 5 Pt. A Sentencing Table. Furthermore, under the Plea Agreement, the government stipulated that no more than 39 months imprisonment was an appropriate sentence, which was at the low end of the applicable sentencing guideline range, *see* USSG Ch. 5 Pt. A Sentencing Table, and that the Court would be bound by the 39-month upper limit if it accepted the Plea Agreement. [CR Doc. 29, p. 8]. The pre-indictment plea offer did not include a comparable stipulation. [CV Doc. 1, p. 16].

Because Ms. Roibal-Bradley could, and likely would, have received a greater sentence under the pre-indictment plea offer, I conclude that she has failed to demonstrate any prejudice resulting from not having accepted that offer and has thus failed to meet her burden on her claim of ineffective assistance of counsel during the pre-indictment plea negotiations.

### 2. Assistance of Counsel During Post-Indictment Plea Negotiations

In support of her claim that she received ineffective assistance of counsel during post-

indictment plea negotiations, Ms. Roibal-Bradley claims that Mr. Bowles: arrived late for a meeting with her prior to the plea hearing, leaving insufficient time to adequately review the Plea Agreement [CV Doc. 2, p. 24]; failed to advise her that the Plea Agreement included a recommendation that she be sentenced to as much as 39 months imprisonment [CV Doc. 2, p. 24]; led her to believe that she would not receive a sentence greater than 366 days [CV Doc. 2, p. 24]; and failed to argue for the inclusion of downward departure or variance such as had been included in the pre-indictment plea offer. [CV Doc. 2, p. 25].[5]

In an affidavit by Mr. Bowles, he states that he scheduled multiple meetings with Ms. Roibal-Bradley to discuss plea offers and the ultimate Plea Agreement. [CV Doc. 11-1, pp. 3-4]. According to Mr. Bowles, Ms. Roibal-Bradley had more than adequate time to review the plea and to make a considered decision. [CV Doc. 11-1, pp. 3-4]. This account is supported by the transcript of the plea hearing in which Ms. Roibal-Bradley confirmed that she understood the terms of the plea and its potential consequences and that she had had plenty of time to review the Plea Agreement with her attorney. [CR Doc. 64, pp. 8-11].

Moreover, the Tenth Circuit has concluded that Ms. Roibal-Bradley entered into her Plea Agreement knowingly and voluntarily. *See United States v. Roibal-Bradley*, No. 17-2042, Doc. 01019907851 (10th Cir. 2017) at 3. The government argues that this now constitutes the law of the case. [CV Doc. 11, p. 17 (citing *United States v. Lynn,* 385 F. App'x 962, 965–66 (11th Cir. 2010) (recognizing that an appellate court's prior decision that appeal waiver was valid was the law of the case and barred subsequent challenge to the sentence); *United States v. Nyhuis,* 211 F.3d 1340, 1343 (11th Cir. 2000) ("[O]nce a matter has been decided adversely to a defendant on direct

---

[5] Ms. Roibal-Bradley also makes a number of allegations pertaining to restitution. [CV Doc. 2, pp. 24-26; CV Doc. 13, p. 7]. However, as discussed in further detail below, Ms. Roibal-Bradley's challenges to the restitution portion of her sentence are not cognizable under 28 U.S.C. § 2255.

appeal it cannot be re-litigated in a collateral attack under section 2255." (internal quotation marks and citations omitted)))].

The Tenth Circuit agrees that under "the law of the case doctrine, courts ordinarily would refuse to reconsider arguments presented in a § 2255 motion that were raised and adjudicated on direct appeal." *United States v. Trent*, 884 F.3d 985, 995 (10th Cir. 2018) (internal quotation marks and citation omitted). Exceptions to the law of the case doctrine apply in "three exceptionally narrow circumstances": "(1) when the evidence in a subsequent trial is substantially different; (2) when controlling authority has subsequently made a contrary decision of the law applicable to such issues; or (3) when the decision was clearly erroneous and would work a manifest injustice." *Id.* (internal quotation marks and citation omitted). There is nothing in this record that indicates that any of these narrow exceptions apply and Ms. Roibal-Bradley does not argue otherwise.

Even absent the Tenth Circuit's ruling on this issue, Ms. Roibal-Bradley has not argued, much less demonstrated, that she was prejudiced as a result of ineffective assistance with respect to the post-indictment plea negotiations. [CV Doc. 2, pp. 24-25; CV Doc. 13, pp. 6-7].

For these reasons, I conclude that Ms. Roibal-Bradley has not met her burden on her claim of ineffective assistance of counsel during the post-indictment plea negotiations.

### 3. Assistance of Counsel During Sentencing

In support of her claim that she received ineffective assistance of counsel during sentencing, Ms. Roibal-Bradley claims that Mr. Bowles: failed to alert the Court that she repaid the victims of her fraud [CV Doc. 2, p. 33]; failed to argue for a downward variance based on the repayments [CV Doc. 2, p. 33]; and failed to advise the Court of her noble motivation (to assist family members with legal matters) for performing legal work despite her suspension from the practice of law by the New Mexico Supreme Court [CV Doc. 2, p. 33].

Contrary to Ms. Roibal-Bradley's contentions, the Sentencing Memorandum prepared by Mr. Bowles included an argument for a reduction in Ms. Roibal-Bradley's offense level based on her repayment to the fraud victims and to the SSA as ordered by the New Mexico Supreme Court. [CR Doc. 44, pp. 1-2]. Additionally, during the sentencing hearing, Ms. Roibal-Bradley advised the Court regarding her reasons for performing legal work notwithstanding her suspension from the practice of law. [CR Doc. 69, pp. 19-20]. Thus, even if Mr. Bowles had failed to make such an argument, Ms. Roibal-Bradley could not demonstrate that she was prejudiced as a result.

For these reasons, I conclude that Ms. Roibal-Bradley has not met her burden on her with respect to her claims of ineffective assistance of counsel during sentencing.

**4. Challenges to Restitution and Disciplinary Proceedings Are Not Cognizable Under 28 U.S.C. § 2255**

**a. Restitution**

Ms. Roibal-Bradley challenges the restitution she was ordered to pay, claiming that both Mr. Bowles and Mr. Porter failed to object to the restitution sought as unlawful and/or unjustified. [CV Doc. 2, pp. 21-27].

Section 2255 permits prisoners in custody who seek to be released upon the ground that their sentences were "imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack" to "move the court which imposed the sentence to vacate, set aside or correct the sentence."

The Tenth Circuit has taken the view, shared by the majority of circuit courts, that challenges to restitution orders are not cognizable in a § 2255 petition. *See Satterfield v. Scibana*, 275 Fed.Appx. 808, 810 (10th Cir. 2008) (recognizing that challenges to restitution orders cannot be brought under § 2241 or § 2255); *see also Mamone v. United States*, 559 F.3d 1209, 1211 (11th

Cir. 2009) ("[The petitioner] cannot utilize § 2255 to challenge his restitution."); *United States v. Bernard*, 351 F.3d 360, 361 (8th Cir. 2003) ("We join a majority of circuits in holding that a federal prisoner cannot challenge the restitution portion of his sentence using 28 U.S.C. § 2255[.]"); *Kaminski v. United States*, 339 F.3d 84, 88 (2d Cir. 2003) ("A convicted defendant who receives an allegedly erroneous fine ... cannot seek post-conviction relief under § 2255[.]"); *United States v. Thiele*, 314 F.3d 399, 402 (9th Cir. 2002) (holding that the habeas petitioner could not collaterally attack his restitution order in a § 2255 motion because while "[c]laims seeking release from custody can be brought under § 2255[,] claims seeking other relief cannot"); *Smullen v. United States*, 94 F.3d 20, 26 (1st Cir. 1996) ("[W]e hold that [the petitioner] cannot challenge his restitution obligation in this § 2255 proceeding.").

"Likewise, a challenge to a restitution order brought under the guise of an ineffective assistance of counsel claim is not cognizable in a habeas petition because it does not seek release from custody." *United States v. Melot*, No. 09-CR-2258, 2015 WL 12778371, at 9 (D.N.M. June 30, 2015); *see Kaminski*, 339 F.3d at 85 n.1 (2d Cir. 2003) ("[E]ven if [the petitioner] could show that his counsel was constitutionally defective in handling the restitution order, we believe that the district court was without subject matter jurisdiction to grant the petition on that basis."); *Thiele*, 314 F.3d at 402; *Smullen*, 94 F.3d at 26.

Thus, Ms. Roibal-Bradley's reliance on a Sixth Circuit Court decision for the proposition that an ineffective assistance of counsel claim regarding restitution is cognizable as a § 2255 claim, is misplaced. [Doc. 13, p. 8 (citing *Weinberger v. United States,* 268 F.3d 346, 351 n. 1 (6th Cir. 2001)).

### b. Disciplinary Proceedings

Ms. Roibal-Bradley claims that Mr. Bowles provided ineffective assistance of counsel in disciplinary proceedings before the New Mexico Supreme Court which were related to the

underlying facts of this case. [CV Doc. 2, pp 35-36].

Such a challenge cannot support a claim of constitutionally ineffective assistance, which only arise in the context of criminal prosecution. *See* U.S. Const. amend. VI; *Austin v. United States,* 509 U.S. 602, 608 (1993) ("The protections provided by the Sixth Amendment are explicitly confined to 'criminal prosecutions.'"). As the Sixth Amendment right to counsel is inapplicable to Ms. Roibal-Bradley's disciplinary proceeding, counsel's representation during that proceeding cannot predicate a § 2255 claim. *C.f. Coleman v. Thompson*, 501 U.S. 722, 752 (1991) ("There is no constitutional right to an attorney in state post-conviction proceedings. Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings" (internal quotation marks and citations omitted)).

Moreover, in challenging her counsel's representation during the disciplinary proceeding Ms. Roibal-Bradley does not challenge her custody. [Doc. 2, pp. 35-36]. Therefore, the representation is not permissible grounds for a collateral attack. *See Anderson v. United States*, 215 F.3d 1329, 1329 (7th Cir. 2000) (unpublished) (finding that ineffective assistance of counsel claim based on counsel's performance at a civil forfeiture proceeding related to a criminal conviction "did not implicate the Sixth Amendment" and was not cognizable under § 2255).

Accordingly, Ms. Roibal-Bradley's ineffective assistance claims concerning restitution and her disciplinary proceedings are not cognizable under § 2255 and should be denied.

## B. Ms. Roibal-Bradley's Other Motions

### 1. Motion for Home Confinement and for Furlough to Attend Court Hearings

In her *Motion for Home Confinement and for Furlough to Attend Court Hearings* [Doc. 3], Ms. Roibal-Bradley requests that the Court approve furloughs for her to attend any hearings before the Court and that the Court enter an Order approving home confinement to begin December 28,

2018. [Doc. 3. P. 1].

Ms. Roibal-Bradley argues that serving the remainder of her sentence, until her September 4, 2019 release date, in home confinement is appropriate because: (1) she is 63 years old with no prior record and is not likely to reoffend; (2) she was approved by probation and the Bureau of Prisons in June 2018 for home confinement and probation; (3) she has elderly parents who need her assistance; and (4) she has been transferred multiple times and the satellite camp at which she is currently detained is overcrowded and has a high incidence of violence. [Doc. 3, pp. 2-5].

In support of her request for home confinement, Ms. Roibal-Bradley cites 28 U.S.C. § 994(j) (2012), USSG 5B1.1 (a)(2), and *Gall v. United States*, 552 U.S. 38, 59 (2007). These portions of the Sentencing Guidelines and the related authority pertain to initial sentencing considerations, not to the modification of a sentence previously imposed. *See* 28 U.S.C. § 994(j) ("The Commission shall insure that the guidelines reflect the general appropriateness of imposing a sentence other than imprisonment in cases in which the defendant is a first offender who has not been convicted of a crime of violence or an otherwise serious offense, and the general appropriateness of imposing a term of imprisonment on a person convicted of a crime of violence that results in serious bodily injury."); USSG 5B1.1 (a)(2) ("[T]he applicable guideline range is in Zone B of the Sentencing Table and the court imposes a condition or combination of conditions requiring intermittent confinement, community confinement, or home detention as provided in subsection (c)(3) of § 5C1.1 (Imposition of a Term of Imprisonment)"); *Gall*, 552 U.S. at 59 (upholding a district court's sentence of probation which reflected a departure from the Sentencing Guidelines). Thus, the authority upon which Ms. Roibal-Bradley relies to support her request for home confinement is not applicable.

"A district court does not have inherent authority to modify a previously imposed sentence;

it may do so only pursuant to statutory authorization." *United States v. Mendoza,* 118 F.3d 707, 709 (10th Cir.1997). Because Ms. Roibal-Bradley's Motion is not a direct appeal or a collateral attack under 28 U.S.C. § 2255, her Motion depends on 18 U.S.C. § 3582(c) or Federal Rule of Criminal Procedure 36. *See United States v. Smartt*, 129 F.3d 539, 540 (10th Cir.1997).[6]

"Section 3582(c) ... provides three avenues through which the court may modify a term of imprisonment once it has been imposed." *United States v. Blackwell,* 81 F.3d 945, 947 (10th Cir.1996) (internal quotation marks and citation omitted). A court may modify a sentence: (1) in certain circumstances "upon motion of the Director of the Bureau of Prisons"; (2) "to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure"; or (3) "upon motion of the defendant or the Director of the Bureau of Prisons," or on the court's own motion, in cases where the applicable sentencing range "has subsequently been lowered by the Sentencing Commission." *Id.* at 947-48 (quoting 18 U.S.C. § 3582(c)(1)(A), (c)(1)(B), (c)(2)).

None of these avenues apply here. There is no motion from the Director of the Bureau of Prisons, nor has Ms. Roibal-Bradley's sentencing range been lowered by the Sentencing Commission. Rule 35 is equally inapplicable.

Rule 35(a) provides that "[w]ithin 14 days after sentencing, the court may correct a sentence that resulted from arithmetical, technical, or other clear error." As Ms. Roibal-Bradley brings this Motion after the fourteen-day period set out in Rule 35(a), this provision is inapplicable.

---

[6] Ms. Roibal-Bradley does not raise her request for home confinement in her *Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence* [Doc. 1], presumably because in her plea agreement in this case, Ms. Roibal-Bradley waived her right to collaterally attack any sentence she received, including under § 2255, except on the issue of ineffective assistance of counsel; she does not assert ineffective assistance as grounds for her request for home confinement. [Doc. 1, p. 35; Doc. 3].

*United States v. Townsend,* 33 F.3d 1230, 1231 (10th Cir.1994) (recognizing that the seven-day time limit imposed by Rule 35 is jurisdictional). Further, Ms. Roibal-Bradley points to no arithmetical, technical, or other clear error. Rule 35(b) provides for a reduction upon motion of the government. Here, there is no motion by the government. For these reasons, Section 3582(c) and Rule 35 are inapplicable.

Thus, I turn to Federal Rule of Criminal Procedure 36 which provides: "[a]fter giving any notice it considers appropriate, the court may at any time correct a clerical error in a judgment, order, or other part of the record, or correct an error in the record arising from oversight or omission." While Rule 36 "gives the court authority to correct clerical-type errors" it "does not authorize substantive sentencing modification." *Blackwell,* 81 F.3d at 948-49. Ms. Roibal-Bradley's Motion seeks a substantive modification of her sentence, rather than to correct a clerical-type error. Therefore, Rule 36 is inapplicable. For these reasons, I conclude that the Court is without authority to modify Ms. Roibal-Bradley's sentence as requested.

To the extent that Ms. Roibal-Bradley is challenging the conditions of her confinement, her these claims are not cognizable in a habeas petition. *See Badea v. Cox,* 931 F.2d 573 (9th Cir.1991) ("A civil rights action [brought pursuant to 42 U.S.C. § 1983] ... is the proper method of challenging 'conditions of ... confinement.'") (citing *Presier v. Rodriguez,* 411 U.S. 475, 499 (1973)).

Finally, Ms. Roibal-Bradley's request that she be furloughed for any hearings related to her *Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence* [Doc. 1], should be denied as moot since there are no such hearings currently set or likely to be set before the Court on that Motion.

## 2. Motion for Appointment of Counsel

In her *Motion for Appointment of Counsel* [Doc. 6], Ms. Roibal-Bradley requests that an attorney be appointed to represent her should the Court set an evidentiary hearing on her *Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence* [Doc. 1]. [Doc. 6, p. 1]. As the recommendation set forth here is that the Motion can be decided without an evidentiary hearing, it is recommended that the *Motion to Appoint Counsel* [Doc. 6] be denied.

## CONCLUSION

For the foregoing reasons, I conclude that Ms. Roibal-Bradley's claims of ineffective assistance of counsel all fail, either because her counsel's performance was objectively reasonable, or because she was not prejudiced by any claimed deficiency. I also conclude that Ms. Roibal-Bradley's associated motions should be denied. Therefore, I recommend that:

1. The *Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence*, [Doc. 1], be DENIED, and that a certificate of appealability be DENIED;

2. The *Motion for Home Confinement and Motion for Furlough to Attend Court Hearings* [Doc. 3], be DENIED; and

3. The *Motion to Appoint Counsel*, [Doc. 6], be DENIED.

_____
JERRY H. RITTER
U.S. MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).

**A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**